USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/15/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

Derek Sloane,

Petitioner,

-against-

Michael Daye,

Respondent.

--------------------------------------------------------------X

25-cv-04583-PMH-VR

**REPORT & RECOMMENDATION**

VICTORIA REZNIK, United States Magistrate Judge

**TO THE HONORABLE PHILIP M. HALPERN, United States District Judge:**

## I. INTRODUCTION

In May 2025, Petitioner Derek Sloane, *pro se* and incarcerated, petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). His petition challenges his 2022 guilty-plea conviction for criminal possession of stolen property in the fourth degree, in violation of section 165.45(2) of the New York Penal Law. (ECF No. 15-5 at 28).[1] That conviction stemmed from his possession of a stolen credit card and resulted in an indeterminate sentence of 1½ to 3 years' imprisonment. (*Id.* at 5, 28).

Liberally construed, Sloane's § 2254 petition raises three claims: (1) his plea was not knowing, voluntary, and intelligent; (2) the trial court "allow[ed] improper material in the presentence investigation report;" and (3) plea counsel and appellate counsel rendered ineffective assistance. (ECF No. 1 at 2–8). Respondent Michael

[1] All page numbers to documents filed on ECF refer to ECF pagination, printed in blue on the top of each page.

Daye moves to dismiss, arguing that the Court lacks subject matter jurisdiction and, alternatively, that Sloane failed to exhaust his claims. (ECF No. 15). This motion is before me under an August 8, 2025, Order of Reference. (ECF No. 11). For the reasons below, I respectfully recommend that Your Honor grant the motion and dismiss the petition for lack of subject matter jurisdiction. When Sloane filed his petition, he was not in custody for the conviction he now seeks to challenge.

## II. BACKGROUND[2]

### A. Sloane's Arrest and Indictments

On December 15, 2020, Sloane was arrested after allegedly stealing a car. (ECF No. 15-5 at 10–13). During processing, the police recovered a stolen credit card from him. (*Id.* at 7, 10–13). The alleged car theft led to Indictment No. 70016-21, which charged Sloane with third-degree grand larceny and third-degree criminal possession of stolen property.[3] (*Id.* at 26).[4] In October 2021, a jury convicted him on both counts, and he was later sentenced to an indeterminate prison term of 3½ to 7 years. (*Id.*).

The stolen credit card led to a separate indictment, Indictment No. 70133-21, which charged Sloane with fourth-degree criminal possession of stolen property, in

[2] Unless otherwise stated, the information in this section is drawn from the instant petition (ECF No. 1), the State Court Record, i.e. exhibits from the state court proceedings that have been submitted by the State (ECF Nos. 15-3 to 15-6), the State's affidavit and memorandum of law (ECF Nos. 15-1 to 15-2), and Sloane's reply papers (ECF No. 20).

[3] In violation of sections 155.35(1) and 165.50 of the New York Penal Law, respectively.

[4] The State Court Record does not contain a copy of this indictment, only a copy of the "Certificate of Disposition" related to the indictment. (ECF No. 15-5 at 26–27).

violation of section 165.45(2) of the New York Penal Law. (*Id.* at 5). Sloane did not proceed to trial on that charge; he pleaded guilty on February 15, 2022. (ECF No. 15-6 at 2–16).

### B. Plea Proceedings

On February 15, 2022, Sloane, represented by Joshua Martin, Esq., appeared before the Honorable Joseph J. Spofford, Jr., Putnam County Court, for a pretrial hearing on the stolen credit card indictment, Indictment No. 70133-21. (*Id.* at 2–4). The court presented Sloane with a proposed disposition: if he pleaded guilty to fourth-degree criminal possession of stolen property, the court would impose an indeterminate sentence of 1½ to 3 years—the minimum sentence authorized by law. (*Id.* at 4–5). The court also agreed to run Sloane's sentence concurrently with the 3½-to-7-year prison sentence it had imposed earlier on Sloane's stolen car conviction. (ECF Nos. 15-5 at 26; 15-6 at 3–5).

Mr. Martin then applied to withdraw Sloane's not-guilty plea. (ECF No. 15-6 at 7). The court asked Sloane whether he joined in that application, and Sloane responded, "That is correct." (*Id.* at 8). Sloane then confirmed, by answering "Yes," that (1) he had enough time to discuss his plea with Mr. Martin; (2) he was satisfied with Mr. Martin's representation; (3) he understood the charges set forth in the indictment; (4) he understood that he had the right to a jury trial, during which the State would be required to prove each and every element of every crime beyond a reasonable doubt, and at which he would have the right to confront and cross-examine the State's witnesses, testify, and call his own witnesses; (5) he understood

that by pleading guilty, he was giving up these and other constitutional rights; and (6) he understood the maximum sentence for the crime to which he was pleading guilty. (*Id.* at 8–13).

When asked whether anyone had threatened, coerced, or forced him to plead guilty, Sloane responded, "No." (*Id.* at 9). When asked whether he was pleading guilty freely and voluntarily, and because he was in fact guilty, he responded, "Yes." (*Id.* at 9–10). And when asked whether anyone had made any promises about the plea, he responded, "No." (*Id.* at 9). The court then conducted a colloquy to confirm the facts underlying the indictment. (*Id.* at 13–15). At first, Sloane denied possessing the stolen credit card, explaining that the corrections officers had seized it from him during the booking process after his arrest for the stolen car. (*Id.* at 14). But after further questioning, Sloane admitted that he was "in possession of stolen property" and that the stolen property was a credit card. (*Id.*). The court accepted his guilty plea, finding that Sloane entered it "freely, voluntarily, knowingly, [and] with the assistance of counsel." (*Id.* at 16).

**C. Sentencing Proceedings**

At the March 1, 2022 sentencing, following Sloane's guilty plea on the stolen credit card charge, defense counsel moved to strike a sentence on page 14 of the Presentence Investigation Report that the "defendant continues to be uncooperative and oppositional to the Putnam County Correctional Center staff." (*Id.* at 22). The prosecution opposed the application, arguing that the statement was relevant to sentencing. (*Id.* at 22–23). The court denied the request, finding "no legal cause to

strike" the sentence and noting, in any event, that the statement would not affect the court's sentencing determination. (*Id.* at 24). The court then sentenced Sloane to an indeterminate term of 1½ to 3 years imprisonment, to run concurrently with the 3½-to-7-year sentence already imposed in February 2022 on the stolen car conviction. (*Id.* at 24–25).

### D. Direct Appeal

On direct appeal, Sloane argued, as relevant here, that: (1) his guilty plea was not knowing, voluntary, and intelligent; and (2) the County Court allowed improper material in the Presentence Investigation Report. (ECF No. 15-4 at 1–28). He based the plea claim on his initial denial, during the plea allocution, that he possessed the stolen credit card, because corrections officers had seized it from him during the booking process after his arrest for the stolen car. (*Id.* at 10–19). His due process claim concerned the County Court's failure to strike statements attributed to a probation officer that were included in the Presentence Investigation Report, despite defense counsel's objection at sentencing. (*Id.* at 20–27). According to Sloane, the report included information the probation officer had heard from correction officers, which constituted double hearsay and also violated his Sixth Amendment right to confrontation. (*Id.* at 21–22).

In November 2024, the Appellate Division affirmed Sloane's conviction for fourth-degree criminal possession of stolen property. *See People v. Sloane*, 219 N.Y.S.3d 741 (Mem) (N.Y. App. Div. 2024). The court held that Sloane's claim that his guilty plea was not made knowingly, voluntarily, and intelligently was

unpreserved for appellate review because he failed to "move to withdraw his plea or otherwise raise the issue before the County Court." *Id.* The court also held, despite the preservation defect, that the record showed Sloane's guilty plea "was knowingly, voluntarily, and intelligently entered." *Id.* As to his due process claim, the court rejected it as meritless and noted that the County Court "did not base the imposed sentence on any alleged error in the presentence investigation report." *Id.*

Sloane sought leave to appeal to the New York Court of Appeals (ECF Nos. 15-4 at 62–76; 15-5 at 1–3),[5] which denied leave on February 28, 2025. *See People v. Sloane*, 254 N.E.3d 645 (Table) (N.Y. 2025).

**E. Sloane Completes His Sentence**

According to the New York Department of Corrections and Community Supervision (DOCCS), Sloane completed his sentence for fourth-degree criminal possession of stolen property (relating to the stolen credit card) on December 16, 2023, while he was still incarcerated for his convictions for third-degree grand larceny and third-degree criminal possession of stolen property for the stolen car. (ECF No. 15-5 at 29–30). As part of the sentence expiration calculation, Sloane was credited with 437 days of jail time for the time he spent in the Putnam County jail. (*Id.*).

**F. The Coram Nobis Petition**

In April 2025, Sloane petitioned the Appellate Division for a writ of error

[5] Two applications for leave to appeal were submitted to the New York Court of Appeals: one by the attorney who represented Sloane in his appeal to the Appellate Division (ECF No. 15-5 at 3), and one by Sloane himself (ECF No. 15-4 at 62–76, 15-5 at 1–2).

coram nobis granting him a new direct appeal. (ECF No. 15-5 at 31–37). In his petition, he argued that he received ineffective assistance of appellate counsel during his initial appeal to the Appellate Division because his appellate attorney generally failed to communicate with him and specifically failed to inform him of the issues the attorney intended to raise on appeal. (ECF No. 15-5 at 33–39) (stating his attorney "failed to provide reasonable advice about the advantages and disadvantages of the issues to raise on the appeal"). According to Respondent, that petition has not been decided and is still pending before the Appellate Division. (ECF No. 15-2 at 6).

### G. Sloane's Section 2254 Petition

On May 19, 2025, Sloane timely[6] filed his § 2254 petition. (ECF No. 1).[7] He raises three claims: (1) his plea was not knowing, voluntary, and intelligent; (2) the trial court "allow[ed] improper material in the presentence investigation report;"

[6] Under 28 U.S.C. § 2244(d)(1), a § 2254 petition generally must be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Here, the New York Court of Appeals denied leave to appeal on February 28, 2025. *See Sloane*, 254 N.E.3d at 645. Because Sloane did not seek a writ of certiorari form the United States Supreme Court, his conviction became final 90 days later on May 29, 2025. *See Williams v. Artuz*, 237 F.3d 147, 148–49 (2d Cir. 2001) ("[A] state prisoner's conviction becomes final for purposes of the one-year limitations period . . . when a writ of certiorari has been denied by the United States Supreme Court or the time for seeking such a writ has expired."); U.S. Sup. Ct. R. 13.1 (providing 90 days to file a petition for a writ of certiorari). Thus, Sloane's § 2254 petition, filed on May 19, 2025, was filed before the limitations period had expired.

[7] Although Sloane's petition was entered on the docket on May 28, 2025, he signed it on May 19, 2025. (ECF No. 1 at 18). Under the "prison mailbox rule," "a *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials." *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order); *see Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir. 2001) (concluding prison mailbox rule applied to habeas petitions), *cert. denied*, 534 U.S. 886 (2001). When that date cannot be ascertained, the date the petition was signed becomes the date the petition was filed. *See Quizhpe v. Superintendent of E. Corr. Facility*, 21 Civ. 1709 (KMK)(PED), 2022 WL 5202275, at *3 (S.D.N.Y. Aug. 22, 2022) (deeming habeas petition filed on date it was signed due to lack of date it was provided to prison officials), *report and recommendation adopted by*, 2022 WL 5197319 (S.D.N.Y. Oct. 5, 2022).

and (3) plea counsel and appellate counsel rendered ineffective assistance. (ECF No. 1 at 2–8).[8] Respondent moves to dismiss the petition in lieu of opposing it, arguing that this Court lacks subject matter jurisdiction and that Sloane failed to exhaust his claims. (ECF No. 15). Sloane opposes the motion, arguing that the Court does have subject matter jurisdiction because he remains in custody on his other convictions. (ECF No. 20).[9]

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Respondent argues that the Court lacks subject matter jurisdiction over Sloane's petition because he fails to satisfy the statutory requirement that he be "in custody" on his challenged conviction. (ECF No. 15-2 at 7–10). Respondent acknowledges that Sloane remains incarcerated on his longer, concurrent sentence for third-degree larceny and third-degree criminal possession of stolen property. But Respondent argues that Sloane is no longer in custody for his fourth-degree criminal possession conviction because his indeterminate sentence expired before he

[8] In his petition, Sloane asserts as a "ground" for habeas relief that "there was some hanky-panky going on" with his case. (ECF No. 1 at 5, 17). But he never says what misconduct occurred. Nor does he provide facts supporting any such claim. Although Respondent treats this assertion as an independent, unexhausted claim, the Court does not. Across the petition, Sloane's "hanky-panky" assertion consists of only two vague sentences. (*Id.*). That is too little for the Court to construe, even liberally, as a bare-bones habeas claim.

[9] After opposing Respondent's motion, Sloane filed an amended habeas petition challenging his other convictions for third-degree grand larceny and third-degree criminal possession of stolen property, in connection with the stolen car. (ECF No. 22). Respondent notified the Court that Sloane previously filed a separate habeas petition in the Southern District challenging those convictions (25-cv-07479), which is pending before the Honorable Nelson S. Román. (ECF No. 23). Respondent explained that he believed Sloane mistakenly filed the amended petition on the wrong docket. (*Id.*). Soon after, Sloane submitted a letter to the Court confirming that the amended petition was inadvertently filed in this action and should have been filed in the action before Judge Román. (ECF No. 25). Thus, there is no impact to the instant motion to dismiss Sloane's initial habeas petition.

filed this petition. (*Id.*). Sloane responds that subject matter jurisdiction exists because he is still in custody, as he remains incarcerated on his other concurrent sentence. (ECF No. 20 at 1–4).

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). A district court has subject matter jurisdiction over a state prisoner's habeas petition "only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States" when he files the petition. 28 U.S.C. § 2254(a) (emphasis added); *Hurdle v. Sheehan*, No. 13-cv-6837 (RJS) (HBP), 2016 WL 4773130, at *2 (S.D.N.Y. Sept. 12, 2016) (concluding court lacked subject matter jurisdiction over habeas petition because petitioner finished serving sentence on challenged conviction despite being incarcerated for other longer, concurrent sentence); *see also Ogunwomoju v. United States*, 512 F.3d 69, 73 (2d Cir. 2008) (affirming dismissal of habeas petition for lack of subject matter jurisdiction because petitioner in immigration detention could not satisfy statutory requirement that he was in custody for state conviction or sentence); *Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 401 (2001) (explaining that "[t]he first showing a § 2254 petitioner must make" is that he is in custody).

To satisfy the "in custody" requirement, a petitioner must show that he is in custody for the conviction he is challenging. *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) ("[A] habeas petitioner [must] be 'in custody' under the conviction or

sentence under attack at the time his petition is filed."). The requirement does not require that the petitioner be "physically confined." *Id.* at 491–92. Courts have instead construed "in custody" to include petitioners "who, at the time of the filing of the petition, were on parole, supervised release, and bail." *Valdez v. Hulihan*, 640 F. Supp. 2d 514, 515 (S.D.N.Y. 2009) (citations omitted); *see also Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (explaining that jurisdiction "is not defeated by the release of the petitioner prior to the completion of [the habeas] proceedings"). But a petitioner generally is no longer in custody once the sentence for the challenged conviction has "fully expired." *Maleng*, 490 U.S. at 491–92; *Valdez*, 640 F. Supp. 2d at 515 (explaining that "once a sentence has been completely served and thus expired, an individual is no longer 'in custody' under that conviction," even if he remains "in custody" on a separate conviction).

Courts recognize two exceptions to this rule. The first exception involves enhanced sentences. A petitioner may challenge a current sentence enhanced by an allegedly invalid prior conviction that has expired. *Maleng*, 490 U.S. at 493–94; *see also Williams v. Edwards*, 195 F.3d 95, 96 (2d Cir 1999). But this exception is "narrow." *Valdez*, 640 F. Supp. 2d at 516. The petitioner must allege that his current sentence was enhanced by a prior conviction that is invalid for one of three reasons: "(1) there was a failure to appoint counsel; (2) a state court unjustifiably refused to rule on a constitutional claim that had been properly presented; or (3) the petitioner presents compelling evidence of actual innocence." *Id.* (citing *Coss*, 532 U.S. at 401–06).

The second exception involves consecutive sentences. A petitioner serving consecutive sentences "is 'in custody' under any one of them" and may challenge a conviction tied to a sentence they already served. *Peyton v. Rowe*, 391 U.S. 54, 67 (1968); *see Garlotte v. Fordice*, 515 U.S. 39, 45–46 (1995) (holding habeas petitioner serving consecutive sentences could challenge conviction even though "the sentence imposed under the challenged conviction lies in the past rather than in the future"). That is because consecutive sentences are viewed "in the aggregate, not as discrete segments," and vacating even an expired conviction "would advance the date" of a prisoner's "eligibility for release from present incarceration." *Garlotte*, 515 U.S. at 47.

Notably, concurrent sentences are different. When a prisoner serving a series of *concurrent* sentences challenges a shorter sentence that has expired, he is no longer "in custody" on that shorter sentence, even if he remains in custody on the longer one. *Hurdle,* 2016 WL 4773130, at *3. That rule follows from practical consequences: "'a successful habeas action resulting in a vacated concurrent sentence would have no effect on [the state prisoner's] release date from his other conviction and sentence.'" *Id.* (quoting *Sweet v. McNeil*, 345 F. App'x 480, 482 (11th Cir. 2009)) (collecting cases); *see also Jenkins v. Capra*, 759 F. Supp. 3d 401, 421–22 (S.D.N.Y. 2024) (holding that habeas petition challenging shortest of three concurrent sentences was "ineligible for habeas review" because expiration of sentence for that conviction meant petitioner not in custody), *appeal dismissed*, 2026 WL 1498762, (2d Cir. Feb. 5, 2026).

Here, on March 1, 2022, Sloane was sentenced to an indeterminate term of 1½ to 3 years' imprisonment for his guilty-plea conviction for the stolen credit card, to run concurrently with the 3½ to 7-year sentence already imposed for his stolen car conviction. (ECF No. 15-6 at 24–25). According to DOCCS, Sloane fully served his shorter sentence for the stolen credit card on December 16, 2023, after receiving credit for time served in the Putnam County jail. (ECF No. 15-5 at 29–30). Sloane filed this petition on May 19, 2025, over 17 months later. (ECF No. 1). Thus, although Sloane remains incarcerated on the stolen car conviction, his sentence for the stolen credit card—the conviction challenged here—had fully expired before he filed this petition. And that is true even without crediting Sloane's time served. Excluding that credit and assuming the maximum 3-year term, his sentence for the stolen credit card expired on March 1, 2025. That is still over two months before Sloane filed this petition. Thus, either way, Sloane was no longer in custody on the challenged conviction when he sought habeas relief.

Neither exception to the "in custody" requirement saves Sloane's petition. The consecutive sentence exception does not apply because Sloane challenges a conviction with a shorter concurrent sentence, not a sentence in a consecutive series. Nor does the enhanced sentence exception apply. Sloane does not allege that his current sentence for the stolen car —the sentence he is still serving—was enhanced by his challenged stolen credit card conviction. His pro se petition therefore cannot be construed as challenging a "'current sentence, as enhanced by an allegedly invalid prior conviction.'" *Hurdle*, 2016 WL 4773130, at *3 (quoting

*Williams,* 195 F.3d at 96). Indeed, Sloane pleaded guilty to the stolen credit card charge *after* the court imposed the sentence for the stolen car conviction. (ECF No. 15-5 at 26–28). And in any event, Sloane makes none of the allegations required to invoke this narrow exception. *See Valdez*, 640 F. Supp. 2d at 516.

Because Sloane's challenged sentence fully expired before he filed his habeas petition, he was not "in custody" on that conviction when he filed it. This Court therefore lacks subject matter jurisdiction to consider Sloane's challenge to that expired sentence. *See Jenkins*, 759 F. Supp. 3d at 421–22 (concluding habeas petition challenging shortest of three concurrent sentences was "ineligible for habeas review" because expiration of sentence for that conviction meant petitioner not in custody); *Hurdle*, 2016 WL 4773130, at *3 (concluding court lacked subject matter jurisdiction of habeas petition where petitioner challenged shorter of two concurrent sentences because challenged sentence fully elapsed months before petition filed) (collecting cases); *Parkinson v. N.Y. State Div. of Parole*, 9:22-CV-1003 (MAD), 2023 WL 1778637, at *2 (N.D.N.Y. Feb. 6, 2023) (similar).

**B. Exhaustion**

Respondent also argues, in the alternative, that Sloane's petition should be dismissed for failure to exhaust his claims. (ECF No. 15-2 at 10–16). Because this Court lacks subject matter jurisdiction over the petition, I respectfully recommend dismissal on that threshold ground, without reaching Respondent's alternative exhaustion arguments. *See Simpson v. Artuz*, 860 F. Supp. 156, 156 (S.D.N.Y. 1994) (declining to address "substantive arguments" about merits of petitioner's claims

because court lacked subject matter jurisdiction over petition); *Hurdle*, 2016 WL 4773130, at *4 & n.3 (dismissing habeas petition for lack of subject matter jurisdiction because petitioner no longer in custody before discussing merits of petitioner's claims in dicta within footnote); *Myers v. Smith*, 444 F.2d 75, 77 n.3 (2d Cir. 1971) (similar).

But if Your Honor chooses to address Respondent's exhaustion arguments, I recommend treating Sloane's habeas petition as a mixed petition and giving him an opportunity to withdraw his unexhausted claims, rather than dismissing the entire petition without prejudice.

As noted above, Petitioner raises three claims: (1) his plea was not knowing, voluntary, and intelligent; (2) the trial court "allow[ed] improper material in the presentence investigation report;" and (3) plea counsel and appellate counsel rendered ineffective assistance. (ECF No. 1 at 2–8). Respondent argues that the entire petition should be dismissed without prejudice because all of Sloane's claims are unexhausted. (ECF No. 15-2 at 10–16). But that argument reads the petition too narrowly and overlooks the exhausted claims it contains. I address each argument below.

**1. Sloane's invalid plea claim includes both exhausted and unexhausted theories.**

Respondent argues that Sloane's invalid plea claim is unexhausted because the theory he presses here differs from the theory he presented to the Appellate

Division on direct appeal. (*Id.* at 14).[10] Thus, they say, the state court lacked notice of Sloane's present claim. (*Id.*). Respondent is partly right. Sloane does advance new theories in support of his invalid plea claim. But liberally construed, as it must be, his petition also asserts the same theory he raised on direct appeal: that he "explicitly denied committing the crime of criminal possession of stolen property in the fourth degree" because he stated during his plea colloquy that he was not in possession of the credit card. (ECF No. 15-4 at 10–19).

To satisfy the exhaustion requirement, a habeas petitioner "must have informed the state court of both the factual and the legal premises" of the claim he later asserts in federal court. *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982). But he need not cite the "chapter and verse of the Constitution" in doing so. *Id.* at 194. It is enough to show that "the legal basis of the claim made in state court was the substantial equivalent of that of the habeas claim." *Id.* at 192, 194 (internal quotation marks and citations omitted); *see Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Bernard v. Stinson*, No. 97 CIV. 1873(KTD), 1998 WL 40201, at *2 (S.D.N.Y. Jan. 30, 1998) ("The nature or presentation of the claim must have been likely to alert the state court to the claim's federal nature.").

On direct appeal, Sloane argued that he "explicitly denied committing the crime of criminal possession of stolen property in the fourth degree" because he stated during his plea colloquy that he was not in possession of the credit card. (ECF No. 15-4 at 10–19). In substance, he challenged the sufficiency of his plea

---

[10] Similar to Respondent's other exhaustion arguments, Sloane did not address this exhaustion argument in his reply papers. (ECF No. 20).

allocution because the facts elicited during the colloquy allegedly cast doubt on his guilt and, in turn, on the voluntariness of his plea. (*Id.*).

In this petition, Sloane makes three arguments: (1) he did not commit criminal possession of stolen property in the fourth degree (ECF No. 1 at 5); (2) he pleaded guilty to get out of "that racist court-room (sic)" because he knew he was not getting a fair trial (*id.*); and (3) his plea was not knowing and voluntary because of his "diminished mental capacity," as shown by his "status as a special education student" (*id.* at 7). Respondent's argument treats the petition as if it raised only the second and third theories. But the petition also expressly denies the underlying offense. (ECF No. 1 at 5, 8). And because Sloane is proceeding pro se, the Court must read that denial liberally, not in isolation. So read, the petition renews the same allocution-based challenge Sloane presented on direct appeal: that his own statements during the plea colloquy negated an element of the offense and undermined the validity of his plea.[11]

That portion of Sloane's invalid plea claim is therefore exhausted. But the other two theories are not. A due process theory based on alleged racial discrimination, and a separate theory based on Sloane's diminished mental capacity, are not substantially equivalent to his direct-appeal argument that he denied committing the crime during the plea colloquy. Those theories therefore

---

[11] This conclusion is buttressed by Sloane's inclusion of his brief to the Appellate Division in his habeas petition (ECF No. 1 at 24–49), which explicitly argued that he denied committing the underlying crime (*id.* at 31–40). Thus, his petition can be liberally construed to incorporate that appellate brief and the arguments presented within it. *See Rodriguez v. Comm'r of Corr.*, 14 Civ. 8283 (VEC) (JCF), 2015 WL 9999195, at *2 (S.D.N.Y. June 3, 2015) (construing habeas petition to include legal sufficiency claim because claim raised in appellate brief), *report and recommendation adopted by*, 2016 WL 447846, (S.D.N.Y. Feb. 4, 2016).

remain unexhausted. *See Camera v. Bombard*, 455 F. Supp. 176, 178–79 (finding claims in habeas petition unexhausted because they were "materially different" from those before the state court (internal quotation marks omitted)); *but see Bernard*, 1998 WL 40201, at *2 (finding habeas petitioner's federal claim was substantially similar to *Sandoval* claim brought in state court).

**2. Sloane's due process claim about improper material in the presentence investigation report is exhausted.**

Sloane's petition also asserts a due process claim based on the trial court's decision to "allow improper material in the presentence investigation report." (ECF No. 1 at 8). As with the invalid plea claim, Respondent reads the petition too narrowly and overlooks this exhausted claim. Although the petition is not perfectly clear that Sloane meant to raise this allegation as a separate ground for relief, it expressly identifies the due process issue. (*Id.*). And Sloane attached his appellate brief to his petition, which raised the same argument. (*Id.* at 41–48). Courts liberally construe habeas petitions to include arguments raised in attached appellate briefs. *See Rodriguez v. Comm'r of Corr.*, 14 Civ. 8283 (VEC) (JCF), 2015 WL 9999195, at *2 (S.D.N.Y. June 3, 2015). So construed, the petition includes the due process claim.

To fully exhaust a claim, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, a petitioner invokes "one complete round" of review

by appealing an issue to the Appellate Division, then seeking leave to appeal to the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

Here, Sloane did exactly what was required of him to exhaust his presentence investigation report claim. He raised it before the Appellate Division, which denied it as "without merit." *People v. Sloane*, 219 N.Y.S.3d 741 (Mem) (N.Y. App. Div. 2024); and he sought leave to appeal the claim from the Court of Appeals, which denied him leave. *People v. Sloane*, 254 N.E.3d 645 (Table) (N.Y. 2025). He therefore invoked one complete round of review in state court and exhausted this claim.

**3. Sloane's ineffective assistance of counsel claims are unexhausted.**

Respondent argues that Sloane's ineffective assistance claims against plea counsel and appellate counsel are unexhausted and should be dismissed without prejudice. As to plea counsel, Respondent argues that Sloane never raised the claim on direct appeal or in a post-conviction motion before the trial court. (*Id.* at 11–12). As to appellate counsel, Respondent argues that the claim remains unexhausted because the Appellate Division has not yet ruled on Sloane's petition for a writ of error coram nobis. (*Id.* at 12–14).[12]

"Under New York law, a knowing, voluntary, and intelligent guilty plea precludes a petitioner from raising a claim of ineffective assistance of counsel that does not implicate the voluntariness of the plea." *Farmer v. Colvin*, 17 Civ. 1901 (PMH)(PED), 2021 WL 4555835, at *15 (S.D.N.Y. Aug. 30, 2021), *report and recommendation adopted by*, 2021 WL 4555041, (S.D.N.Y. Oct. 4, 2021). But where,

[12] Sloane did not address either of these exhaustion argument in his reply papers. (ECF No. 20).

as here, the claim implicates the voluntariness of the plea, a petitioner "must raise [this claim] as part of a motion to vacate judgment under [section 440.10 of the New York Criminal Procedure Law] and then seek leave to appeal to the Appellate Division" because the claim turns on matters outside the record. *Id.* (internal quotation marks and citations omitted). Notably, a section 440.10 motion "may be brought at any time after the entry of judgment," and so does not expire or become unavailable with the passage of time. *Bonneau v. LaManna*, 18 Civ. 2228 (CS) (AEK), 2023 WL 5526717, at *6 (S.D.N.Y. Aug. 27, 2023) (internal quotation marks and citation omitted).

Here, it is undisputed that Sloane did not raise his claim for ineffective assistance of plea counsel on direct appeal or in a post-conviction motion before the trial court. (ECF No. 1 at 2, 13). But because he can still raise this claim in a section 440.10 motion "at any time after the entry of judgment," this claim is neither exhausted nor procedurally defaulted.

Sloane's claim for ineffective assistance of appellate counsel is also unexhausted but for a different reason. "In New York, a writ of error coram nobis is the appropriate remedy for an ineffective assistance of appellate counsel claim." *Page v. Conway*, No. 10 Civ. 5264(DAB)(KNF), 2013 WL 2896798, at *15 (S.D.N.Y. May 3, 2013), *report and recommendation adopted by*, 2014 WL 1877677, (S.D.N.Y. May 8, 2014). To exhaust that claim, a habeas petitioner must file a coram nobis petition, obtain a ruling on it, and then seek leave to appeal that ruling from the New York Court of Appeals. *See McCall v. Rivera*, 965 F. Supp. 2d 311, 339

(S.D.N.Y. 2013) (emphasis added) (explaining that "a ruling on a *coram nobis* application . . . is necessary to exhaust a claim of ineffective assistance of appellate counsel in the New York state courts"); *Francois v. Warden of Sullivan Corr. Facility*, 12-CV-5333 (RRM), 2016 WL 4435215, at *3 (E.D.N.Y. Aug. 19, 2016) ("A final decision on a coram nobis petition exhausts a petitioner's claim for ineffective assistance of appellate counsel."); *Hawkins v. Lape*, No. 08 Civ. 2669(BMC), 2009 WL 890549, at *4 (E.D.N.Y. Mar. 30, 2009) (finding ineffective assistance of appellate counsel claim unexhausted because habeas petitioner never sought leave to appeal denial of coram nobis petition).

Although Sloane petitioned the Appellate Division for a writ of error coram nobis (ECF No. 15-5 at 31–39), a Westlaw search did not reveal any ruling on that petition. Thus, his ineffective assistance of appellate counsel claim remains pending and unexhausted. *See Moncayo v. Superintendent Green Haven Corr. Facility*, 797 F. Supp. 3d 175, 197–98 (E.D.N.Y. Aug. 28, 2025) (finding habeas petitioner's ineffective assistance of counsel claim unexhausted because coram nobis petition pending with Appellate Division).

Sloane's petition is thus a mixed petition, containing both exhausted and unexhausted claims. A federal court may not adjudicate a mixed petition. *See Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). Instead, a court has four options: (1) dismiss the entire petition without prejudice, (2) stay the proceedings and hold the petition in abeyance while the petitioner exhausts his claims, (3) deny the entire petition on the merits under

AEDPA if all the claims are meritless, or (4) allow the petitioner to amend the petition by withdrawing the unexhausted claims. *See Farmer,* 2021 WL 4555835, at *16. As to the fourth option, courts have explained that, when stay and abeyance is inappropriate, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines v. Weber*, 544 U.S. 269, 278 (2005); *accord Chu v. Artus*, No. 07 Civ. 6684(RJS)(DF), 2011 WL 8202381, at *15 (S.D.N.Y. Aug. 9, 2011); *see also Young v. Great Meadow Corr. Facility Superintendent*, 16-CV-1420 (PAE) (BCM), 2017 WL 480608, at *4 (S.D.N.Y. Jan. 10, 2017) (citing *Rhines* for proposition that court may allow petitioner to delete unexhausted claims to allow for ruling on merits of exhausted claims).

If Your Honor reaches the exhaustion issue, I recommend the fourth option: give Sloane an opportunity to amend his petition by withdrawing the unexhausted claims. Although Respondent argues that the petition should be dismissed without prejudice, this would likely impair Sloane's right to obtain federal relief on his exhausted claims because they would be time-barred. But if Sloane timely amends and removes the unexhausted claims, the Court can reach the merits of his exhausted claims and resolve the petition. If he does not timely amend, the Court can treat that choice as an election to proceed with the unexhausted claims included. The Court can then revisit the remaining options—dismissing the entire petition without prejudice or denying the petition on the merits. This approach

preserves the Court's flexibility to resolve the instant petition while giving Sloane a fair opportunity to proceed on any exhausted claims.

**CONCLUSION**

For the above reasons, I conclude—and respectfully recommend that Your Honor should conclude—that Respondent's motion should be granted and the instant § 2254 petition should be dismissed for lack of subject matter jurisdiction. Further, because reasonable jurists would not find it debatable that Sloane has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability should be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

DATED: White Plains, New York
June 15, 2026

Respectfully submitted,

VICTORIA REZNIK
United States Magistrate Judge

**NOTICE**

**Pursuant to 28 U.S.C. § 636(b)(1)(c), Rule 72(b) of the Federal Rules of Civil Procedure and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections. If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. Fed. R. Civ. P. 6(a), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Philip M. Halpern, at the Hon. Charles L. Brieant, Jr., Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.**

**FAILURE TO TIMELY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF ANY ORDER OF JUDGMENT THAT WILL BE ENTERED. *See Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008).**

**Requests for extensions of time to file objections must be made to Judge Halpern.**